# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP221-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Nhia Lee, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 396 Wis. 2d 136,955 N.W.2d 424
PDC No:2021 WI App 12 - Published

| | |
|---|---|
| OPINION FILED: | May 24, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 10, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Marathon |
| JUDGE: | Lamont K. Jacobson |

JUSTICES:
REBECCA GRASSL BRADLEY, J., filed a concurring opinion in which ZIEGLER, C.J. and HAGEDORN, JJ., joined. DALLET, J., filed a dissenting opinion in which ANN WALSH BRADLEY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner there were briefs filed by *Julianne M. Lennon* and the *Law Offices of Attorney Julianne M. Lennon.* There was an oral argument by *Julianne M. Lennon.*

For the plaintiff-respondent there was a brief filed by *Timothy M. Barber*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Timothy M. Barber.*

An amicus curiae brief was filed by *Ellen Henak* and *Henak Law Office, S.C.* for the Wisconsin Association of Criminal Defense Lawyers. There was an oral argument by *Ellen Henak* and *Bonnie Hoffman*.

An amicus curiae brief was filed by *Jerome F. Buting* and *Buting, Williams & Stilling, S.C.* for the National Association of Criminal Defense Lawyers.

An amicus curiae brief was filed by *Andrew T. Phillips, Natalie D. Fluker, and Matthew J. Thome* and *von Briesen & Roper, S.C.* for the Wisconsin Counties Association.

An amicus curiae brief was filed by *Katie R. York*, state public defender, for the Office of the Wisconsin State Public Defender.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP221-CR
(L.C. No. 2018CF1025)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

  **v.**

**Nhia Lee,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**MAY 24, 2022**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Dismissed as improvidently granted.*

¶1 PER CURIAM. Nhia Lee petitioned for review of a decision of the court of appeals, State v. Lee, 2021 WI App 12, 396 Wis. 2d 136, 955 N.W.2d 424, reversing the circuit court's orders denying his motion to dismiss the criminal complaint and remanding with directions to grant the motion and dismiss the criminal complaint without prejudice. After reviewing the record and the briefs, and after hearing oral arguments, we conclude that this matter should be dismissed as improvidently granted.

*By the Court.*—The review of the decision of the court of appeals is dismissed as improvidently granted.

¶2 REBECCA GRASSL BRADLEY, J. *(concurring).* In her dissent, Justice Rebecca Dallet identifies a number of "systemic issues" with the "process for appointing counsel for indigent defendants." Although acknowledging a lack of merit with two of the three issues Lee raises, she nevertheless accuses the court of "fail[ing] him" by dismissing his petition as improvidently granted. Justice Dallet doesn't explain how the court "fail[s]" Lee, considering he would remain incarcerated regardless of this court's disposition of his case.[1] Even if one or more of Lee's issues have merit, Justice Dallet "agree[s] with the court of appeals that, consistent with our precedent, the correct remedy for failing to hold a timely preliminary examination is dismissal without prejudice for lack of personal jurisdiction."[2] Resolving Lee's case therefore would require nothing more than an opinion from this court agreeing with the court of appeals. There are much better uses of this court's time than repeating work already done correctly by a lower court.

¶3 Justice Dallet seems to suggest Lee's case somehow offers an avenue for taking "transformative steps" to implement policy changes.[3] As she sees it, "Lee's appeal provided the court with the chance to highlight the problems with our appointed-counsel system, so all three branches of government

---

[1] Dissent, ¶6 n.2.

[2] Id., ¶9.

[3] Id., ¶16.

2

can begin working toward solutions."[4] That's not part of our case-deciding function. When we grant a petition for review, we resolve issues of law.

¶4 The court's superintending authority, which Justice Dallet would apparently use to effect policy changes she acknowledges would inflict a financial burden on counties, "is ordinarily exercised when a party asserts error by the circuit court causing 'great and irreparable' 'hardship.'" Koschkee v. Evers, 2018 WI 82, ¶42, 382 Wis. 2d 666, 913 N.W.2d 878 (Rebecca Grassl Bradley, J., concurring/dissenting) (citing Application of Sherper's, Inc., 253 Wis. 224, 226, 33 N.W.2d 178 (1948); State ex rel. Wis. State Dep't of Agric. v. Aarons, 248 Wis. 419, 423, 22 N.W.2d 160 (1946)). There was no error in this case, and we should not transform it (or any other case) into a vehicle for "highlight[ing]" issues that are more properly considered through a rule petition or legislative proposal.[5] The principal policy changes for which Justice Dallet advocates are properly considered by the legislature, which possesses the power of the purse. We don't have this power, which is why we should decide cases and leave policymaking to the legislature.

¶5 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice BRIAN HAGEDORN join this concurrence.

---

[4] Id., ¶17.

[5] Id., ¶16 n.6.

3

¶6 REBECCA FRANK DALLET, J. (*dissenting*). The criminal justice system has already failed Nhia Lee twice, and by dismissing his appeal, we fail him as well. First, he was not promptly appointed counsel after being charged with felony drug and identity theft offenses. Second, the circuit court and court commissioners, often over Lee's pro se objections, erroneously exercised their discretion by repeatedly extending the 10-day statutory time limit for holding a preliminary examination solely because the State Public Defender's Office (SPD) had not yet appointed counsel for Lee. See Wis. Stat. § 970.03(2) (requiring a preliminary examination within 10 days of the initial appearance unless the parties stipulate or "on motion and for cause.");[1] State v. Lee, 2021 WI App 12, ¶¶51-52,

---

[1] A preliminary examination "is a hearing before a court for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant." Wis. Stat. § 970.03(1). It serves a different purpose than a Riverside hearing, which is a constitutionally required preliminary probable cause determination that must be made within 48 hours of arrest "as a prerequisite to extended restraint of liberty," and which does not entail any adversary rights. See Gerstein v. Pugh, 420 U.S. 103, 114 (1975); see also County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); State v. Koch, 175 Wis. 2d 684, 697-98, 499 N.W.2d 152 (1993). This requirement was satisfied when the circuit court made an initial finding of probable cause the day after Lee was arrested.

4

396 Wis. 2d 136, 955 N.W.2d 424. Those extensions resulted in Lee being in custody for 113 days before a preliminary examination was held, 101 of which were prior to the appointment of counsel.[2]

¶7 Now, with no explanation, the court dismisses his appeal as improvidently granted. By doing so, we minimize the important questions Lee's case raises about the efficacy of Wisconsin's process for appointing counsel for indigent defendants, which protects one of a defendant's most important constitutional rights. See Wis. Const. art. 1, § 7 (providing that a criminal defendant "enjoy[s] the right to be heard by

---

Unlike a Riverside hearing, a preliminary examination "'protect[s] the accused from hasty, improvident, or malicious prosecution'" by providing defendants the right to cross-examine the State's witnesses and to call witnesses of their own. State v. Williams, 198 Wis. 2d 516, 527, 544 N.W.2d 406 (1996) (quoted source omitted); see also Wis. Stat. § 970.03(5). At the conclusion of the preliminary examination, the court must find probable cause to believe a felony was committed in order to bind over the defendant for trial. See id., at (7). Despite the 10-day statutory time limit for holding a preliminary examination, Lee's preliminary examination did not take place until 113 days after his initial appearance.

[2] Lee was initially charged with the drug offenses in a different case. After Lee made an initial appearance in that case, authorities discovered he had given a fake name. As a result, that case was dismissed and this case was filed, adding the identity theft charge. In this case, Lee made his initial appearance on September 10, 2018, but the hearing was continued until the next day. The time Lee spent in custody before counsel was appointed is calculated from the conclusion of the initial appearance on September 11, 2018.

While Lee was in custody, he was also being held on an extended-supervision hold in another case. See State v. Lee, No. 2015CF1190 (Brown Cnty. Cir. Ct.).

5

himself and counsel."); see also State v. Forbush, 2011 WI 25, ¶43, 332 Wis. 2d 620, 796 N.W.2d 741 (recognizing that "to be effective, [the Article I, Section 7 right to counsel] must include the right to have the expense of counsel for indigent defendants covered by the State."). I write separately to discuss the systemic issues highlighted by Lee's case.

¶8 Before addressing those broader issues, however, I briefly discuss the legal issues Lee raised in this appeal. Section 970.03(2) gives the circuit court discretion to extend the time limit for holding a preliminary examination "on motion and for cause." In State v. Selders, 163 Wis. 2d 607, 472 N.W.2d 526 (Ct. App. 1991), the court of appeals held that a circuit court's discretionary decision to extend the time limit for "cause" must be based on the justification for the extension, the possible prejudice to the opposing party, and, where appropriate, the public interest. See id. at 613-16. Here, the parties agree with the court of appeals that the circuit court and court commissioners erroneously exercised their discretion in finding "cause" to extend the time limit for holding Lee's preliminary examination, because those extensions were based solely on the fact that counsel had not yet been appointed for Lee. See Lee, 396 Wis. 2d 136, ¶¶51–52.

¶9 The parties disagree, though, about what remedy is appropriate. The court of appeals concluded that the circuit court should dismiss the criminal complaint without prejudice. See id., ¶61. Lee argues that the appropriate remedy is dismissal with prejudice. We have repeatedly held, however,

6

that the remedy for failing to hold a timely preliminary examination is dismissal without prejudice for lack of personal jurisdiction. See, e.g., Armstrong v. State, 55 Wis. 2d 282, 285, 198 N.W.2d 357 (1972); Crummel v. State, 46 Wis. 2d 348, 356, 174 N.W.2d 517 (1970); State ex rel. Klinkiewicz v. Duffy, 35 Wis. 2d 369, 375, 151 N.W.2d 63 (1967). Departing from that precedent would require a "special justification," which Lee does not offer. See Hennessy v. Wells Fargo Bank, N.A., 2022 WI 2, ¶27, 400 Wis. 2d 50, 968 N.W.2d 684. Instead, he argues that the circuit court's failure to hold a timely preliminary examination means the circuit court lost competency. See generally Green Cnty. Dep't of Human Servs. v. H.N., 162 Wis. 2d 635, 656, 469 N.W.2d 845 (1991) (failing to comply with statutory time limits may result in the circuit court losing competency to proceed). But even if the circuit court lost competency, that doesn't explain why the charges against Lee must be dismissed with prejudice——and we have never held as much. See City of Eau Claire v. Booth, 2016 WI 65, ¶21, 370 Wis. 2d 595, 882 N.W.2d 738 (explaining that a lack of competency means that the circuit court may not adjudicate "the particular case before the court" (quoted source omitted)). I therefore agree with the court of appeals that, consistent with our precedent, the correct remedy for failing to hold a timely preliminary examination is dismissal without prejudice for lack of personal jurisdiction. See Lee, 396 Wis. 2d 136, ¶¶61-62.

¶10 Lee's alternative arguments are also unavailing. I agree with the court of appeals that Lee's constitutional

7

speedy-trial claim is premature. See id., ¶62 n.24. And as for Lee's remaining constitutional claims——that the unjustified delay in holding a preliminary examination resulted in violations of his Sixth Amendment right to counsel or Fourteenth Amendment right to due process——it is not clear from the briefing that these claims, even if successful, would give Lee the remedy he seeks. Finally, I agree with the court of appeals that our order in In re Petition to Amend SCR 81.02, S. Ct. Order 17-06, 2018 WI 83 (issued Jun. 27, 2018, eff. Jan. 1, 2020) mandated only an increase in the hourly rate for court-appointed counsel. See Lee, 396 Wis. 2d 136, ¶¶35-36.

¶11 That said, Lee's final argument merits further attention: that we should use our superintending authority to require circuit courts to appoint counsel at county expense when there are delays in securing SPD-appointed counsel. See Wis. Const. art. VII, § 3 ("The supreme court shall have superintending . . . authority over all courts."). There are several reasons why this court has not already done so. For starters, appointing counsel at county expense only responds to one reason SPD might have trouble finding an attorney willing to accept an appointment: the low hourly rate for SPD appointments,

8

which is set by statute.[3] Appointing counsel at county expense does not, however, address the other potential obstacles SPD might encounter, including heavy workloads or conflicts of interest among local lawyers, or a relative lack of qualified attorneys in a particular part of the state. Moreover, even if the issue is the meager compensation for SPD appointments, it is difficult to create a bright-line rule for when circuit courts would be required to appoint counsel at the more generous county rate, because any such line would necessarily be arbitrary and could have significant budgetary consequences for counties.

¶12 Nevertheless, there are strong reasons to change the status quo, namely that the costs of maintaining it are too high. Counties bear not just the cost of paying court-appointed counsel but also the costs "of continuing to incarcerate the

---

[3] In Petition to Amend SCR 81.02, 2018 WI 83, we observed that the then-applicable $40-per-hour statutory rate under Wis. Stat. § 977.08 (2018-19) for private attorneys appointed to represent indigent criminal defendants was "the lowest in the entire nation." Id. at 2. Because of that "abysmally low" rate, "SPD struggles to find counsel who will represent indigent criminal defendants" at the statutory rate because many attorneys "literally lose money if they take these cases." Id. at 2-3. In Marathon County, where Lee was charged, it took the SPD "an average of 80 contacts and 17 days to appoint a private attorney to a case." See id. at 7.

Effective January 1, 2020, the legislature increased the statutory rate for SPD appointments to $70 per hour. 2019 Wis. Act 9, §§ 2244, 2245. Although that change was not in place when the SPD sought appointed counsel for Lee, I hope it will increase the number attorneys willing to accept SPD appointments in the future.

defendant while awaiting the preliminary hearing."[4] See Lee, 396 Wis. 2d 136, ¶55. In addition to the monetary costs, delays in appointing counsel also impose significant and unquantifiable harms on both defendants and the public. Uncounseled defendants may be hindered in their ability to prepare a defense, engage in plea negotiations, or seek pretrial release. See Blackledge v. Allison, 431 U.S. 63, 71 (1977) (explaining that plea bargains can help defendants "avoid[] extended pretrial incarceration and the anxieties and uncertainties of a trial" and lead to speedy disposition of the case). And failing to timely appoint counsel to represent an indigent defendant may tarnish the public's perception of the fairness of our criminal justice system by suggesting that speedy justice is available only to those who can afford a private attorney. Not to mention that delays in appointing counsel may lead to the same negative consequences as any other pre-trial delay, such as postponing closure for victims or increasing the chance that witnesses may become unavailable.

¶13 The court of appeals' decision helps to alleviate some of these concerns by mandating that circuit courts carefully consider and analyze, on the record, all relevant factors before

---

[4] Information about the costs at the county-jail level is hard to come by, but according to a 2018 report, it costs an average of $38,644 per year (or $105.87 per day) to house an inmate in a state correctional facility. See https://www.wisbar .org/NewsPublications/WisconsinLawyer/Pages/Article.aspx?Volume= 91&Issue=6&ArticleID=26397#a; see also https://www.prisonpolicy. org/blog/2017/02/07/pretrial_cost/ (nationally, pre-trial incarceration costs local governments $13.6 billion per year).

extending the statutory time limit for a preliminary examination. See Lee, 396 Wis. 2d 136, ¶50 (citing Selders, 163 Wis. 2d at 614-15); see also id., ¶¶54-55, 59 ("The justification for extending the time limit must be set forth with reasonable specificity, and the court must consider countervailing factors and what weight to give them."). Importantly, the court of appeals also emphasized that "simply observing that the defendant has not yet had counsel appointed by SPD is insufficient" to justify extending that time limit. Id., ¶51.

¶14 Indeed, Lee's case perfectly illustrates that point, as well as broader systemic issues. At each of Lee's 12 review hearings, the circuit court or court commissioner extended the time for holding a preliminary examination on their own motion and often over Lee's objections. Such extensions require a finding of cause; yet the record indicates that neither the circuit court nor the court commissioners knew the cause for the delay. For example, at the fifth review hearing, a court commissioner told Lee, "I wish I could tell you what the hold up is . . . . I'm not sure what the hold up is on your particular case." After Lee wrote the circuit court in mid-October asking for the case to be dismissed due to the failure to hold a preliminary examination, more than three weeks passed before the circuit court held a hearing on Lee's request. At that hearing, a SPD attorney appeared and explained that SPD had contacted over 100 attorneys and none were willing to represent Lee, but she was not asked why that was the case. After the review

11

hearing, the circuit court observed that the delay was "getting very, very close to the point where the Court could find a constitutional violation," but it refused to dismiss the case. Lee waited 44 more days for counsel to finally be appointed.

¶15 The facts of this case are concerning, and reflect a breakdown in our system of appointing attorneys for indigent defendants. Even prior to the COVID-19 pandemic, SPD staffing shortages and a low hourly rate for appointed counsel resulted in delays in finding counsel for indigent defendants, especially to more rural parts of the state. Delays will likely increase as the criminal-justice system responds to a statewide backlog of more than 17,000 felony cases.[5]

¶16 Although circuit courts cannot solve all of the state's appointed-counsel problems on their own, they can help to prevent unjust delays by ensuring that extensions of time for holding a preliminary examination are granted only upon a finding of cause. Circuit courts should also seriously consider using their power to appoint counsel at county expense, especially when they find, as the circuit court put it in this case, that the delay is "very, very close to . . . a constitutional violation." See Douglas County v. Edwards, 137 Wis. 2d 65, 76, 403 N.W.2d 438 (1987) ("The trial court has the authority to appoint counsel whenever in the exercise of its discretion it deems such action necessary."). Additionally,

---

[5] https://www.jsonline.com/story/news/local/milwaukee/2022/04/07/how-milwaukee-county-courts-plan-clear-case-backlog-fix-staff-shortages/7247260001/.

more transformative steps are needed from all three branches of government, including allocating additional funding for indigent criminal defense, encouraging increased pro bono participation, and providing incentives for attorneys to live and practice in the rural parts of the state where these problems are particularly pressing.[6]

¶17 Lee's appeal provided the court with the chance to highlight the problems with our appointed-counsel system, so all three branches of government can begin working toward solutions. Because the court instead summarily dismisses the case, I respectfully dissent.

¶18 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[6] The court has the power to adopt rules of "pleading, practice, and procedure in all courts, for the purposes of simplifying the same and of promoting the speedy determination of litigation upon the merits." Wis. Stat. § 751.12(1). We have recently used that power to take steps in the right direction, including by adopting a rule petition that allows lawyers to elect emeritus status at age 70, relieving them of State Bar dues and continuing-legal-education requirements, while allowing them to continue performing pro bono work. See In re Modification of Emeritus Status, S. Ct. Order 20-06, 2021 WI 19 (issued Mar. 2, 2021, eff. July 1, 2021). We have likewise expanded opportunities for law students to practice under supervision prior to graduation. See In re Petition to Repeal and Recreate SCR Ch. 50, S. Ct. Order 20-04, 2021 WI 20 (issued Mar. 2, 2021, eff. July 1, 2021). The State Bar is also doing important work to highlight opportunities for new lawyers and law students to practice in rural areas. See https://www.wisbar.org/NewsPublications/InsideTrack/pages/article.aspx?Volume=10&Issue=14&ArticleID=26523.